We'll hear argument first this morning in Case No. 15-497, Fry v. Napoleon Community Schools. Mr. Bagenstos. Mr. Bagenstos. Thank you, Mr. Chief Justice, and may it please the Court. Congress adopted the Handicapped Children's Protection Act to make clear that the IDEA is not the exclusive vehicle for protecting the rights of children with disabilities, and Congress also sought to make clear that cases brought under other Federal statutes like the ADA and the Rehabilitation Act may proceed directly to court so long as they are not actually seeking relief that is also available under the IDEA. Under that statutory text, it is irrelevant whether the plaintiff could have sought some other form of relief that would have been available under the IDEA. Kennedy, suppose that there is a school district and two surrounding school districts within the same Federal court jurisdiction and same circuit have each been ordered to make accommodations under FAPE, under FAPE, for a dog. And then a person in the third school district just sues under the ADA. Is there an exhaustion problem? Well, I think the question would be what is the relief that the plaintiff is seeking in that third lawsuit? So it just depends on what the complaint says? I think it depends on the relief the plaintiff is seeking, because that's what the  So the statutory language says that the plaintiff is seeking relief under FAPE. But then you're saying that the artful form of the complaint suffices to subject the district court to damages that it might not, the school district, to damages that it might not otherwise have had to pay. Well, a couple of points about that. First, I don't think it's the artful form of the complaint. I think it is the relief the plaintiff is seeking. But secondly, remember, this is damages being sought under a separate Federal statute that would fully apply even if exhaustion existed. The question isn't whether the school district is going to be subjected to damages under the ADA or not. That is something that might exist anyway. The question is whether IDEA proceedings have to first be exhausted. And what Congress said about that in this statute, unlike in other Federal statutes where it said exhaustion is required whenever any remedy is available, here what Congress said is when the plaintiff is seeking relief that is also available under the IDEA. Ginsburg. You could have, as Justice Kennedy suggested, gone the IDEA route. You could have asked to accommodate the dog. And if you had done that and you were turned down, could you then switch to the ADA track, or would you have to, having started under IDEA, continue on that route? Well, under Respondent's position here, I think we would have, and under the Sixth Circuit's position certainly, we would have to follow all of the IDEA procedures through to their conclusion before filing a lawsuit under the ADA. I don't think we still would be able to file the ADA lawsuit. Now, there is a difference not just in terms of relief in the lawsuit that would be filed under the ADA versus the one that would be filed under the IDEA, which is under the IDEA, in order to get any relief, the plaintiff would have to show not just that there is a denial of a dog, but that that actually deprived the plaintiff of a free, appropriate public education. Under the ADA, the rights that individuals with disabilities have to bring their service dogs to public facilities are the same in all public facilities. You have a service dog, you can bring it. Roberts, I understand you would be making two arguments. One is that you don't have to exhaust because you're asking for damages, and those aren't available under the IDEA. And the second one is you don't have to exhaust because you're not complaining about the fair and appropriate public education provision. Are those separate arguments, or are do you have to satisfy both of them? No, I think they're independent arguments, Mr. Chief Justice. So I think the fact that we are seeking emotional distress damages, and those damages as the Sixth Circuit recognized are not available under the IDEA, is fully sufficient for us to prevail here to say that exhaustion was not required. Roberts, so if that's the case, why — I would suspect that the denial of what is sought under the IDEA for a fair and appropriate public education is something that could well cause emotional distress in most cases. And so is all you're saying is that you have to tack on to an IDEA claim a claim for damages for emotional distress, and then you don't have to exhaust. And so whenever a school district denies an element of an FAPA or a proposed element, they will always face two-track litigation. I don't think that that's right, Your Honor, because it's not the case that every time there's a denial of a free, appropriate public education under the IDEA, there's also going to be a violation of the ADA, right? These are overlapping. Breyer. That's true, but you could find, I mean, in — I have exactly the same question — in a very large number of suits, you know, in a very large number of suits, brought are controversies where a child is seeking a special plan, there is a statute that gives him that right, and it rests heavily on his getting together or his parents getting together with the school board and trying to work something out that makes sense. Now, it seems to me, as the Chief Justice just said, that if we accept your first argument, not in all cases, but in many cases, where their lawyer wishes to avoid this exhaustion requirement, all he would have to do is wait and then sue the school board to sue, not for putting the child in a private school, but rather for emotional suffering. Now, if that argument, if what I have just said is right, which I think is what was just said by the Chief Justice, that would seem to gut the carefully written procedural system that the IDEA sets up. And that's what is concerning me, and I don't think the word relief has to be read in the technical way in which you're reading it. Well, so I think this goes not just to what the word relief actually says. I think, you know, this is a highly carefully crafted procedural regime, as Your Honor says, Justice Breyer. But part of the careful crafting of the regime is the Handicapped Children's Protection Act, which, remember, overruled a decision of this Court or overturned a decision of this Court that had sought to channel all disability education claims into IDEA proceedings. What Congress said in the HCPA was, there are other statutes that may provide independent remedies under at that point, it was the Rehabilitation Act, Section 1983. Congress later added the ADA to that list. And those cases may be pursued independently, said Congress, so long as the plaintiffs are not actually seeking anything they can get in IDEA proceedings. And the answer to me, and I think to the Chief, so far, is so what? Because that's what Congress wanted. Is there any answer other than that? Well, so, I mean, I think there are a couple of answers other than that. I do think it's what Congress wanted, and I think if you look at both the text and the legislative history, Senator Weicker's brief goes through this, shows that it's what Congress wanted. But in addition to that, yes, I think there is a lot of reason to believe, and we have education administrators, Thomas Hare, Melody Musgrove, and Madeline Will, who specifically say, look, we think that what parents are going to do, based on our experiences, go through IDEA procedures, because what they want is to get the relief that's available in IDEA proceedings. There are some cases, like this case, like the Fry case, or I'm sorry, like the Payne case in the Ninth Circuit, where you have a case of abuse, where the principal injuries are not injuries to education, they're emotional injuries, those are the ones that get sued to court. So I think there's practical answers. Roberts' I guess that's right, but even if what you say is right, and it makes a lot of sense, a lawyer advising a client might advise that, look, this is what you want the school to do so that you can have a free and appropriate education for your child. You will have a lot more leverage getting the school to do that if you also sue them under the ADA in Section 504, and the school boards sit in there looking at it and say, gosh, we're not only exposed to what the relief is under the IDEA, but we're going to have to pay damages. You understand my point. As a practical matter, it would be, could well be, in the child and parent's interest to proceed along two tracks, because that makes it much more likely, even if all they really want, they don't care about the money, they really care about an education for their child. But I think the point about that, I think that is right about a lot of practical issues here. The crucial point there is that exhaustion does not change the leverage that the plaintiff has here, right? So even under the Sixth Circuit's rule, the plaintiff, our clients could have exhausted IDEA proceedings, said at the time we filed an IDEA administrative complaint, by the way, school district, we are also going to sue you under the ADA and Rehabilitation  And we would have had to do that. Roberts, later on, once we're done with this. Once we're done with this, and we would have had to do that. But I think one of the important things in this type of proceeding is timing, right? I mean, we're talking about a school year, and all this takes time. So the idea that, well, when all this ends, you know, who knows, and I gather there's a debate about how quickly these things are resolved, then we might bring this. I mean, if you do it at the same time, that gives you the leverage when you need it to get the accommodation in place that you want for the child. Well, Your Honor, I think there are obviously a lot of variables. I think a lot of defense lawyers would certainly say being threatened with long, drawn-out proceedings, at the end of which is a damages award, is pretty significant leverage as well. And I think the point is that time also works both ways here, right? One of the things that Congress was trying to do in the HCPA was recognize that the ADA and Rehabilitation Act of 1983 are independent and requiring parents to first proceed through what are likely to be time-consuming proceedings under a separate statute, the IDEA, that can't give them the relief that they're seeking under those independent statutes. But your whole point, again, is it depends on what's in the complaint. And the statute says that before the filing of a civic civil action, you have to exhaust. If the statute were written your way, it would say at the time you file the complaint, the complaint must ask only for. That's what you're saying, but that's not what the statute says. So I'd say a couple of things about that, Your Honor. I mean, first of all, I think seeking relief might naturally be read to look at what's in the complaint. But in any event, I don't think our argument turns on what we're at what we asked for in the complaint particularly. We have made clear throughout these proceedings, not just in the complaint, but as the proceedings have gone on, that what we are asking for is compensatory damages for emotional distress. Kagan. And this takes you back to the first part of the Chief Justice's question, just so I can understand the argument. You're really making two arguments. One argument is initially when we filed the complaint and ever since, we've really only sought emotional distress damages, and emotional distress damages are something that can't be given under the IDEA. And that's one argument. But there's a second argument, which says, you know, putting that aside, the reason why we don't need to exhaust is because we're not alleging that we've been denied a fair and appropriate public education. You know, we're alleging some other denial or deprivation, but we're not alleging that. We agree that the school has given us a free, appropriate public education. And that in itself, as I understand it, would also mean that you don't have to exhaust, right? So it can be one or the other. Is that what you're saying? Waxman. Yes. So, yes, I tried to say, yes. Kagan. This case is actually the combination of the two, is what you're saying. So in some ways, you're saying this is the easiest case where both are true. You're neither alleging a denial of a FAPE, nor are you seeking the kinds of damages that an IDEA officer could provide. So it's the intersection of the two theories. But if I understand your argument, either one of those things would mean that you don't have to exhaust. Is that right? I agree with that, Justice Kagan, yes. I think this — I think under either theory, we wouldn't have to exhaust, and because this is a case where both what we are seeking is something that categorically is unavailable in IDEA proceedings. And what Mr. Bannon says, could you clarify what you are giving up by taking this route, by suing under the ADA and not under the IDEA? So what we are giving up and what parents are giving up generally by pursuing this route is anything you could get under the IDEA, so that is reimbursement of educational expenses, that is compensatory education, that is changing an IEP. Now, we are seeking none of that. We are seeking none of that in this lawsuit. What we are seeking in that case … Kagan. But you might be. I mean, and this goes to — I mean, suppose — suppose that you weren't alleging a denial of a FAPE, but you were seeking damages that included, you know, I sent my kid to private school. I had to hire a tutor, damages that you could get from an IDEA officer, but for some reason that didn't have to do with the denial of a FAPE, you are saying that you don't have to exhaust in that context either. Right. So that is the second argument, and I agree that the Court does not have to reach that argument in order to rule in our favor here. But yes. But if we did, I mean, it seems to me that that might address many of the concerns that have been raised about the impact of the two-track proceeding. Yeah. In other words, if, in fact, if your argument were to be that, no, you need both, it seems to me that would address a lot of the practical problems. Now, I appreciate the fact that you think in this case both are present. Right. But yet you want to make a more aggressive argument that you only need one. Right. And I think we would certainly prevail under the you-need-both theory, and that's why we allege and we have argued throughout this case. And I suppose one understanding of this is we don't have to really deal with what happens if you only have one, because you're saying you have both. Is that right? That is entirely right. So let's be clear about the second point here. So the defendants have said all along that because they gave my client a one-on-one aid, that all of her physical and educational needs were satisfied, and we have not challenged that. If, you know, it would be difficult for us to challenge that. I know this Court has a different free appropriate public education case in front of it later this term that may clarify what FAPE means, but under current Sixth Circuit law, it would be difficult for us to challenge it. What we have said is the injury my client experienced is not a denial of education, but, for example, the humiliation that she experienced when she was forced to go to the toilet with the stall door open and four adults watching her because defendants did not trust her to use her dog to transfer it to the toilet bowl. That is not a free appropriate public education claim, Your Honor. And Mr. Chief Justice. Ginsburg's claim could be made by someone who doesn't qualify, who is disabled, but doesn't qualify for IDEA because doesn't have any learning disability. Absolutely. A person who has a disability that does not require special education, so is not covered by the IDEA, would still be covered by the ADA and be able to make exactly the same claim in a school here. Yes, that's right, Justice Kennedy. Alito What would happen if the claim was that the child suffered emotional damages because of the denial of educational benefits? So I think that would be a harder case because that would present only the first of our two theories. That would be we would be seeking damages that are not available under the IDEA. And remember, the statute says, seeking relief that is also available, not alleges an injury that might be redressed in IDEA proceedings. Now, under that plain text, I think exhaustion wouldn't be required, but our case is stronger because we have both here. And if I may reserve the balance of my time. Robertson Thank you, counsel. Thank you. Mr. Martinez. Martinez Mr. Chief Justice, and may it please the Court. The parties, both parties and the government now all agree that the rule under which the Sixth Circuit decided this case is wrong, and that exhaustion is required only if the relief that the plaintiff actually seeks in the case is available under the IDEA. In light of that agreement, we think the most sensible way to resolve the case is simply to reverse the decision below and let the claims go forward. As the Sixth Circuit pointed out, the relief actually sought in this case is money damages, not a change to the IEP, and that relief is not available under the IDEA. Sotomayor Mr. Martinez, that begs the last question that was asked, which is the pain you know the Ninth Circuit pain decision. It doesn't do just that. It doesn't look just at the relief. It looks at the nature of the claims and decides whether they are a FAP claim or not, whether it is seeking a change in a FAP or not, in essence, in substance. So it's not looking at it technically as we're asking for relief, but it's looking at whether or not a FAP claim is the substance of the allegation. You're disagreeing with the Ninth Circuit approach, presumably. Martinez, we learned at Justice Sotomayor, I just want to be clear how we understand the Ninth Circuit's approach. We understand the Ninth Circuit, and we explained this in our brief at the petition stage, to be departing from the other circuits and actually saying that what matters is what the plaintiff actually asks for. Sotomayor No, what they're saying is the nature of the relief that they're asking for, would it require or necessitate a change in the FAP? That's one of the three prongs that they look at. Martinez, are you talking about the third prong in this? Sotomayor Yes, exactly. Martinez, okay. We do disagree with that third prong, Your Honor, but I think that third prong is addressed to circumstances in which the elements of the non-IDEA claim that's being brought up overlap entirely with the provision of FAP. So just to go to the last argument, the last question directly, then. Complaint says the FAP was all wrong, it's hurt my child, and that's the nature of the complaint. Martinez, yes. Sotomayor And it seeks injunctive relief for the future, not to be hurt. Martinez, yes. You would have to exhaust it. Sotomayor All right. Sotomayor With no change of FAP or no other thing is said, it's just I want compensatory damages. Martinez, yes. We think that if you're seeking injunctive relief in a circumstance in which you think that the FAP is wrong. Sotomayor How about no injunctive relief, past and future damages for emotional distress? Martinez, I think if there's the only relief sought in the complaint, and that's what the statute says you look for, is money damages, we think that the text of the statute says that you have to figure out whether that relief sought is available under the IDEA. And I think there's common agreement that that relief sought is not available under the IDEA, so you would not need to exhaust. Now, I want to address. Breyer If it's that simple, if it's that simple, then why are we in this argument? You apply ordinary exhaustion principles. Under ordinary exhaustion principles, you never have to exhaust if exhaustion would be futile. Okay? So you say exhaustion applies, it would be futile, they can't give what I want, end of the matter. So what is all this complexity? I had thought that it might be because – will you tell me? Martinez, I agree with that, Justice Breyer, and we think that what Congress did here was adopt a rule that essentially embodies that principle. Breyer So could I say that? Could I say, very well, what they did here is adopt the well-known for a hundred years or more exception to the exhaustion requirement where exhaustion would be futile. Judge, you go back and apply that to this case. End of case. No reason for special law for prisons, for IDEA, for other things. Martinez I think you could adopt the rule and it's set out in the McCarthy decision, it's set out in the House report on page 7. Breyer No, I haven't memorized that. Are they in essentially saying what I am saying? If I go to Pierce on administrative law and look up Davis, I will find some words and those are the words. Martinez The words I would suggest are the words that you use are as follows. That if the hearing officer lacks authority to grant the relief sought, those are the words of the House report, then exhaustion is not required. Those are also essentially the health inspection. Kennedy I just want to make sure of the government's position. Is the position of the United States that a FAPE cannot include relief for this sort of problem? Personal assistance during the school day to accommodate the particular disabilities? Martinez In some circumstances, a FAPE can accommodate that, but we don't think that that's the relevant question for purposes of applying the statute, because the statute turns, says that the exhaustion question turns on whether the relief that the plaintiff is actually seeking. Those are the terms that the statute uses. The relief that the civil action is seeking is available under the IDEA. Kennedy But it talks about before filing the complaint. Martinez It says before filing the complaint, you have to exhaust. Kennedy Suppose it was very clear that most FAPE plans cover precisely this kind of problem. Same case? Martinez I think that if the facts of whether a FAPE would allow for the school to take account of the service dog really isn't the question, because the question under the statute turns on what the person is asking for, what the relief that he seeks. And the statute says that the civil action has to be seeking a particular form of relief. And if that's what you're talking about, all you're talking about is artful pleading. Martinez No, not at all, Your Honor. And I want to address your question and the concerns that came up, the practical concerns about the parents who actually do want what they really want is a change to the IEP. If the parent files the lawsuit, the ADA lawsuit, and says I want an injunction that's going to require the service dog, that is the kind of relief that would have to be exhausted. Breyer So they have to get a service dog if, in fact, it's going to cost them $5 million in damages. And they're talking about before filing the complaint. All right. Before filing the complaint, you're already in negotiation with the board, and you think I'm also entitled to this under this ADA statute, let's file a complaint and ask for damages, it will be res judicata or something when I win, and then they'll have to give me the dog. And if that is the theory, then while it might work in this case, there are thousands of cases where parents don't have the money to litigate, where some do, where some don't, where boards are in difficult problems, and all these very great difficulties in such cases which are worked out through negotiation won't be. Martinez No, I don't think that's right, Your Honor, because I think as a practical matter. I'm a parent. If one of my children were being harmed in a school, I would try, and I thought that this was wrong, I would immediately be looking to find the most, the quickest form of relief that the law could provide me. And the quickest form of relief for a parent who actually wants a change on the ground to the situation is to follow the IDEA procedures. Roberts No, but the point is, you're likely, they're going to listen to you a lot more carefully if you say, and by the way, I'm also filing a suit under Section 504 and the ADA, and then that's a lot more leverage. Martinez With respect, Mr. Chief Justice, I think what I would do in that circumstance is pursue the IDEA process and say up front, you know, if I lose in this IDEA process, I'm going to bring the ADA claim with all the damages involved. So I can make that threat at the beginning because everyone agrees here that at the end of the day, regardless of whether or not I exhaust, I can ultimately go to the ADA process and or file a suit under the ADA or Section 504. Roberts Well, I don't think that's what you would do, but I guess you're the better judge of that than I am. But where — what is your position on the question I asked earlier about the two-track proceeding? Is it enough that they're seeking damages, or — and is it enough that the — Martinez We think — Roberts They're fine with the FAPA or the IEP, or does it have to be both? Martinez No, we think that these are two different independent reasons why exhaustion is not required here. The plaintiffs in this case are seeking money damages. Money damages is not available under the IDEA. Therefore, they don't have to exhaust. That's argument one. Argument two is everyone on both sides of this case agrees that a FAPE was provided and that the IDEA was not violated. It therefore makes very little sense for the Court to say that you need to go to an administrative process so that the question of whether a FAPE was provided and the IDEA process — the IDEA was violated can be resolved, because both parties already agree on that. Our legal system does not require parties to go into any proceeding in court in an agency and make arguments that they do not believe are true. Roberts So is the parties' concession sufficient to answer that question? Martinez I think the parties' concession is sufficient to answer that question. Kagan What if you had a complaint where the parties did concede that IDEA was not violated, that a FAPE had been provided, but as you looked at the allegations in the complaint, it really seems that there is ground to think that a FAPE was not provided and that the IDEA was violated. What do you do with a complaint that looks like that? Martinez I think if the parties agree that the FAPE was provided, that should be enough. And I don't think — because I don't think that this statute has in mind a sort of process by which either a Federal court or an IDEA hearing officer is given some sort of roving commission to go sniff out FAPE and IDEA violations. The IDEA hearing process is an adversarial process. It depends on the parties to come together, bring their disagreements forward, bring evidence, and then a decision is made. It's not some sort of process where the hearing officer is supposed to say, well, I know the parties agree that there's no legal violation, but we're going to go ahead and maybe there is one anyway. And I think that the rule that Respondents advocate here, which would require people to bring claims that they do not believe has merit, not only is it unheard of in American law, but it actually is inconsistent with the IDEA itself, which would allow for an award of attorney's fees against a parent who brings a claim that's frivolous, unreasonable, or without foundation. Roberts. Thank you, counsel. Mr. Katyal. Katyal. Thank you, Mr. Chief Justice, and may it please the Court. The complaint that was actually filed in this case in response to Justice Kagan illustrates the point of the type of dispute Congress chose to channel through local education experts. They don't have both. They've got neither. The brief and opposition appendix, page 21, has the complaint's prayer for relief, and it contains three forms of relief that we believe are available under the IDEA. First, a declaration that EF was entitled to attend school with her dog. Second, money to pay for the costs Petitioners incurred in homeschooling EF and for counseling.  Sotomayor. Sotomayor, I know the Respondent's appellate, what allegation says they want reimbursement for her schooling, et cetera? So first they want a declaration, okay, and that's number B, and then C is? But the declaration was that the ADA had been violated. Correct. And our point is that the statute requires you to look at is this relief available under the IDEA. Here, the relief is not available. You don't get a declaration that the ADA has been violated or the Rehabilitation Act has been violated from an IDEA officer. Absolutely, Justice Kagan. That's not our point. You know, we couldn't read the statute to the second half of section 1415, the exhaustion requirement, to say you've got to show a, you know, that the IDEA gives that form of relief. Really, I think what 1415 does is it has two parts. The first, as Mr. Bagenstos started his argument with, was it's about the what. It's about what can — it's about — it's saying that Smith v. Robinson was wrong, that basically, you know, there was rights above and beyond the IDEA. The second part, though, is the timing, and it says if you're choosing to bring one of those lawsuits, you've got to first exhaust the IDEA procedures if the relief available is one that you could get from the IDEA. If you read it to say, oh, you've got to show an IDEA violation, that they've got to ask for an IDEA declaration, then you're essentially gutting the statute. Ginsburg. Any relief? I mean, that — I gather your furthest argument is that if any relief is available under the IDEA, you must pursue that route first. But that's exactly what Congress declined to adopt when it was proposed by the National School Board Association. So you must be saying something short of if any relief is available. Well, we certainly caution the Court about failed legislation, trying to read too much into that. But, you know, and you're right, Justice Ginsburg, that's our broadest argument, and the argument works like this. The complaint has invoked the idea that they're seeking any appropriate relief. And here, any appropriate relief means anything that is available that could be granted by a Federal court. If you do what you say to them, they're going to do it, and they're going to do it. Roberts Well, that's boilerplate that may or may not be significant. But I — do you concede, and I couldn't quite tell from your brief, that they will be able to get money damages for everything they're seeking under the ADA in Section 504 under the IDEA? We don't concede everything, but we do think that they can — that they get a part. And I think that's a good point, Justice Sotomayor, because Section 504 to 50 explains here the only thing the complaint seeks is the word damages. That's at the brief in Appendix Page 21. And to understand the damages, you have to look to the complaint. The complaint isolates, as our brief goes through in quoting chapter and verse of the complaint, things like compensatory education, things like homeschooling. Roberts They're asking for other things, right? I know basically you're — so are you saying they'll get some of the damages they're seeking but not all of them? Correct. That is the — Well, then, under Jones' case, isn't the rule, well, then, you know, they get to proceed with the things that they're not going to be able to get under the IDEA? Absolutely not, Your Honor, for a few reasons. First, the Jones case itself is that your opinion is about letting good claims go forward versus bad claims. Here there are only two claims. One is a violation of the ADA. The second is a violation of the Rehabilitation Act. Now, it is true that one of their prayers for relief is damages, not, by the way, emotional damages, which is what the reply brief paints it out and says it 27 times. It just says damages. And so in order to — Jones does not permit, and indeed no decision of this Court has ever permitted a plaintiff to try and slice and dice a prayer for relief in one way or another. Rather, the question is, is this claim, under your opinion, a good claim or a bad claim? Liberty Mutual, your decision in Liberty Mutual, says a claim is a cause of action. And here the question, then, under 1415 is, is the cause of action something that requires exhaustion?  Sotomayor, when I look at the claimed harms, which the only allegations besides the prayer for relief at the end, is in Respondent's Appellate 11, 50 through — or 51A through F, every one of those harms alleged is a component of emotional harm. Nowhere are they saying she was harmed by having to pay for — to pay for a tutoring program or harmed by her mother losing her job, which is what your brief was talking about. Here, all of the harms alleged are essentially compensatory emotional harms. A, the denial of equal access. B, the denial of the use of wonder. C, interference to form bonds with other kids. The denial of an opportunity to interact with other children. And F says it very directly. Emotional distress and pain, embarrassment, mental anguish, inconvenience, and loss of enjoyment. Those are — every one of these are the classic damage harms that are compensatory. So how does the IDEA provide compensatory damages for these injuries? Our brief goes into this in detail at those pages. I know, but I was trying to look for it in the complaint and I couldn't. Well, I do think that the only place in which emotional is isolated is F. This is, of course, a non-exhaustive list in paragraph 51. And things like interference and denial of the opportunity to interact are exactly the kinds of things IDEA relief officers provide in the form of counseling. Think of it this way. Suppose that this girl wanted to go into a public library a couple of times a week. And the library said, you can't take your dog here. We're going to just provide you with a librarian who will help you do all the things that your dog otherwise helps you with. And the girl brings a suit. Isn't that suit exactly the suit that she brought, except that instead of a library, it's a school? But that's her — that's her claim, and those are her damages, that she was deprived of access to a public facility in a way that caused her distress and emotional harm. Justice Kagan, it may work in that case as opposed to this one. That's because 1415 is a unique exhaustion statute geared to the school setting. It's a carefully calibrated situation where the IDEA, Congress accepts this idea of exclusion. Kagan But this goes back to Justice Ginsburg's point. I mean, the entire point of the statute and the overruling of our prior case was Congress saying, the fact that the IDEA exists for schools does not mean that you don't have separate ADA and Rehabilitation Act claims. And if you bring those separate kind of claims, which are essentially denial of access claims to public facilities, and then you're asking, in addition to that, for a form of damages that has nothing to do with what any IDEA officer can provide, then you can go forward without exhaustion. That's exactly right in terms of explaining the first half of 1415. It doesn't explain the second half, the timing provisions of 1415. And to understand this, one nice way of doing it is to just look at the government's brief that they filed in Payne, and this was going back to your question about Jones and Bok. A money damages suit, the government told the Ninth Circuit that a money damages suit would not go forward because implicit in it is a declaration that there is an IDEA violation. So if you — Mr. Martinez said in response before, if the complaint only sought emotional distress money damages, could that suit go forward? In Payne, the government said the reverse. And the reason for that is that when a Federal court awards money damages, the first thing it is doing is issuing a declaration that the underlying problem was a violation in some way or another. So if you accept it, EF's complaint here, what you'd be doing is accepting the IDEA, ordering a declaratory judgment that the school of law. Breyer, this is what we're — where I am. I want a quick reaction from you, if you can give it, that the problem of deciding against you is not necessarily in this case, but in other cases where, in fact, it would be fairly easy by how you write the word damages in your complaint to have judges deciding IEPs without the preliminary negotiation and views of the school board, which would seriously undercut and hurt the — this statute which is designed to get the educational plan. The trouble with deciding it your way is, I think, exactly what Justice Kagan said. Almost anything can be written into an educational plan having to do with the child's day at school. And therefore, when there is nothing more to it than a claim that the librarian wrongly kept the dog out of the library, the school librarian, you wouldn't be able to bring the suit, because, after all, you could have written such a thing, don't keep the dog out of the library in the plan. So what to do? Now, I'm here thinking in the back of my mind of words that have come up in other cases, like gravamen of the complaint, or which we've had in many cases involving sovereign immunity or all kinds of things, which Holmes and, you know, Frankfurter talked about. What is the gravamen of the complaint? And were we to say, let us look to the gravamen of the complaint, the heart of the complaint, what it's really about, if what it's really about is a significant matter in respect to the IEP, then you do have to exhaust, unless, of course, it's futile. If it is not, you don't. And then let the lower courts decide this one. So three points, first in response to the first half, about whether or not this would gut the exhaustion provision. We absolutely agree, and I found the answer Mr. Bagenstos gave to the Chief Justice in your question about leverage in destroying the kind of carefully wrought system astonishing. He said that's right, and that he admitted that this would destroy the carefully wrought system. Now, second, would ours do that, going to your other point? Is this going to? Ginsburg. I thought he simply said, if you're going the IDEA route, you must pursue it to the end. But he said, we're not going the IDEA route. We're asking the same thing that we would ask if this child didn't have an IEP. We're asking for access to the facilities. As I understood his answer, Justice Ginsburg, to the Chief's question, it was that, yes, a lawyer could walk in on day one and sue for money damages and then extort or possibly leverage that into a better situation in terms of money. The amicus brief from the school boards explains that this actually happens in real life. Now, with respect to the concern that you had, I think this case is an easy one, because in this case, the IEP, the complaint itself says the IEP denied the dog. If a Federal district court, going back to Justice Kagan's first question, orders declaratory judgment, which is what they sought expressly, then you'd be calling the IEP into question. That's why the district court, at Petition Appendix page 49. Ginsburg. But what does that say other than it's a recitation of fact? There was an IEP, and it didn't include the dog. And what that means is if the Federal district court said, here are money damages because you denied the dog, implicit in that, this is the government's brief in Payne as well as this Court's own decision in Fair v. McNary, which I'll explain in a moment, that means that there is a declaratory judgment that the government, that the school erred, and that itself calls the IEP into question. Kagan. Kagan. They're saying that the IEP was perfectly sufficient. If all you look at is the kinds of educational criteria that IEPs usually look at, then the dog isn't necessary. What the dog is necessary for is things that don't have anything to do with the IEP, is what the plaintiffs say. And after all, that's what they're saying, and that's what they're seeking, and that's what this statute suggests that we ought to look to. Justice Kagan, I think that's wrong about the facts and the law. On the facts, I don't think you can affirm on that theory. This is a new theory that they've put before this Court that somehow they've conceded that there is no fape violation of the complaint itself. Sotomayor, you're supposed to look at a complaint as a whole, okay? At the moment, it's filed. What's clear in this complaint, because the allegations say it, is this is what happened. It didn't have it in the IDEA. We asked them to do it, they didn't do it. They finally agreed to do it, and then we've placed our child in another school. They have a paragraph that says, ''She's now happily in another school that welcomes her and her dog.'' Okay? They then talk about all the emotional distress. At that moment, either because of futility, because she can't change the IDEA at a school she no longer attends, the school she's in is already giving her her dog, there's no declaratory relief being sought that her current IDEA is deficient. Forget about the past one, is deficient. Why in the world, at the moment she filed the complaint, would she have to go back or should have gone to the school earlier? She's no longer seeking anything related to the IDEA facts. So Justice Sotomayor, two answers, and we agree with you absolutely. Read the text of the complaint as we were having that interchange earlier. The text of the complaint, including the paragraphs you read, talk about how the denial of the dog undermined her independence, and part of the IDEA, one of the three statutory goals, and this is in 20 U.S.C. 1400d1, is independence. That's why your former colleagues on the Second Circuit in the case decision Sotomayor, you are now going past where I am, okay, or you're going behind what I'm saying but not getting to the point, Ms. Cattell. Maybe before she changed schools, she might have been entitled to something related to her IDEA, but at the moment this complaint was filed, on its own face, where is it potentially or otherwise to the IDEA that is no longer in effect? Katyala, and that is my second answer to you. So the second answer is the complaint asks for a declaratory judgment, and that's what we were talking about at the beginning. To ask for a declaratory judgment under this Court's decision in Golden v. Weichler in City of Lyons, the only way they can invoke Article III jurisdiction is by saying there's a reasonable prospect that the situation will recur. There is not a word in the complaint that says she won't return to the school. And indeed, the Sixth Circuit grapples with this all the time when children leave the school and file these lawsuits. There's a case called Woods, which is at 487 Federal Appendix 979. And what that case says is even if you leave the school, the school has an ongoing obligation to keep an IEP current in case the person comes back to the school. If you adopted, if a Federal district court granted their declaratory judgment, the only way they can do so and the only way they can invoke Article III processes is by saying, look, there's a chance EF might come back. And that happens all the time. That happens, you know, in the Payne case itself. People file lawsuits, they leave the school, and then they come back. That's what they asked for, Justice Sotomayor. They didn't ask, and indeed the Sixth Circuit briefing is very clear on this point, they never asked for emotional damages or even the word damages doesn't appear. Sotomayor, would you fit into the Payne three criteria, the Ninth Circuit's three criteria? Katyala, that the Ninth Circuit kind of uses to evaluate whether or not there is a fake violation? Katyala, we think that if there's a denial, that they can't just concede and say, oh, we think there's no fake violation, and then that allows an end run around 1415. Rather, we think 1415 asks, is the relief available? And to understand whether the relief is available, it's not a subjective inquiry. It can't be plaintiff-centered. It's got to be objectively, is relief available? So just by ordering all of these cases. Ginsburg How much relief, going back to what you said before, I think you told me you're not pressing any relief, so how much relief? Katyala, I do think that if the complaint seeks relief that is available under the IDEA, then at least that claim can't go forward, going back to the Jones v. Bok thing. So if, for example, Justice Ginsburg, you had a claim like the dog one here, and then you had a separate claim that said something like the child was being abused in the home, or something like that, something that didn't implicate a FAPE or an IDEA, certainly I think that claim could go forward. That's a separate claim. It's a good claim under Jones v. Bok. What can't go forward is something like this, because Congress had this in mind. They had the idea that a plaintiff can gut 1415 by saying, oh, I don't want an IDEA violation. I just want – I don't want IDEA relief. I want money damages, because then they could file that lawsuit on day one, evade the cooperative process that Congress has set forth, get relief from the district court, and then by res judicata, not this. Roberts The cooperative process you're talking about, given their position that they're not asking for any relief under the FAPA, would be kind of a charade. You get in the meeting room and they say, well, what do you want? And you say, well, we don't want anything that you can give us. We want money that's not available. We certainly agree that if it triggers the kind of futility exception, if they literally can't give the relief for one reason or another, absolutely, they don't have to go through.  Breyer Here, this also might be peripheral. I mean, this is a dog for a child who is not blind, so it's not subject to the regulations. They have a teacher who is going around, or a person who is acting as a guide within the school. And this is, to that degree, a peripheral matter in respect to the plan, and perhaps, at least arguably, more like the librarian in the school who or the person who does beat up somebody or treat them badly, which could be the subject, but a pretty minor part of an IEP. So this is going back to something I was trying to get to earlier about your second half of your question. Look, we agree that if there's a circumstance in which the IEP or FAPE processes aren't directly implicated in some way, that's a different case. That's not this one. In this one, you have them seeking, invoking the IEP process for the very same thing they're asking the Federal district court to do, which is a declaration that the school erred by not going to the school. Well, I don't understand that, Mr. Cotillo. I mean, you yourself have an example in your brief of abuse towards a handicapped disabled student that would result in money damages and maybe emotional distress, but maybe also the parents took the kid out of school and is asking for the private school tuition that they had to incur, so all kinds of things. But it was not because of anything that the IEP said or didn't say. It was because there was discrimination on the basis of disability. Now, it was in a school, and it could be remedied by school-type things like stop discriminating or abusing against a disabled student. But even you in your brief say that doesn't have anything to do with the IDEA. And so why isn't this the same thing? Because, Justice Kagan, as that page, as page 37 explains, a lot of lower courts have said that when you have a discrete instance of abuse, that doesn't violate the IDEA. It doesn't violate the IDEA. I don't understand discrete instance. How about if you had a continuing stream of abuse? If it's a continuing stream of abuse, something that does implicate IDEA processes and deny FAPE, absolutely it would require exhaustion in that circumstance. The IDEA doesn't care about particular instances, but cares about the IDEA? There are some things, Justice Kagan, that are dealt with through the IDEA process. Typically, those are things that recur as opposed to one-offs, yes. And so I could imagine a one-off being so significant, maybe that would be different. The Court doesn't need to get into it here. Here you've got a core situation in which they have invoked the IEP process to do exactly what they're saying. Kagan, you're suggesting that there's no such thing as continuing discrimination that happens in a school setting that actually does not have anything to do with the IEP. I certainly think to the extent that something like that exists, we're not, our position doesn't require exhaustion there. In order, there has to be, you know, relief has to be available under the IDEA. Here, relief is available under the IDEA. Indeed, they invoked exactly that process. As I understand it from one of the amici briefs, just to sort of put a fine point on this, there are close to a million students who are disabled in some way, but who do not get an IEP. So if there's discrimination or if there's a failure to provide access to one of those students, you don't have to exhaust the IDEA procedure, do you? Well, I'd caution the Court into saying the IEP is the only thing that's necessary. But the IEP is a good template, as this Court said in Honig. It's the kind of centerpiece of the IDEA. It's a good template for whether or not there's an IDEA violation. It may not always map on perfectly, but it's a pretty good proxy. And so when you have a circumstance like this, in which they have tried, they invoked the IDEA process for the dog. I'm not sure I understood the answer to the question. In that case, you would not send the child to the IDEA officer, would you? Well, Justice Kagan, you talked about a million different possible situations. 700,000. 700,000. I believe what the So some of those may be circumstances in which for one reason or another, the IEP just didn't govern the situation, but should. And in those circumstances, yes, we think exhaustion would be required. In others, which follow more like the examples at our page 37, the kind of discrete one-off things, those are situations when absolutely they wouldn't require exhaustion in those circumstances. Congress had something simple in mind in 1415, which is that if you can get the relief through the IDEA, if that's what it's set up for, if that's the scheme Congress wanted to channel that stuff to, then go through that first. Here, you need no better evidence that that happened than that they invoked those very processes here. And if you allow their legal theory to proceed, disclaim FAPE, disclaim seek-only money damages, then you are No, no, no. The there will often be situations where parents will seek relief under the IDEA and then be told early in the process or whatever, maybe the school will tell them, look, we can't do that and here's why. And the parents will think, okay, so this is not available. We're not going to pursue that relief under the IDEA. We're instead going to sue under the ADA. So certainly if it's futile, if they say, look, we lack the authority to do it. No, no. They say, you know, we could press ahead with this. We could sit down with them and say, no, you've got to do this and that. But it's going to be easier for us just to proceed under the ADA. Yeah. And the choice Congress made in 1415, and going back to an earlier question, I know it seems a little unusual to say and strange to say, why are you forcing plaintiff parents into a scheme that they don't want? But that's the scheme Congress laid out. That's a consequence of an exhaustion statute, which is to say … Well, it can't be just not a scheme they don't want. It may be a scheme that they decide, no, the relief we seek is not available under this. This isn't a case. They do have the human who's taking care of these things. And under the – that's enough for FAPA. But, you know, we still have this discrimination complaint. And, Mr. Chief Justice … So then you do – you will agree that that's an awkward position for them to go to the meeting and say, we don't want anything. It's certainly awkward, Mr. Chief Justice. But I think what Congress said there is it's not up to the individual parent subjectively to say, hey, I don't want any part of this process. Rather, what Congress said is you've got to go through the process, and then at the end of the 105 days, this is a very short statutory process, then you can come into Federal court. Sotomayor, this is about timing. Sotomayor, my problem is, what were they – is the only argument that you're making that they're not entitled to their declaratory judgment because they didn't exhaust that, are they entitled, whether they exhaust it or not, to the ADA claims for monetary compensatory damages for pain and suffering? Justice Sotomayor, they may be at the end – they first have to exhaust. This is only about timing. It's now too late to exhaust, right? No, not at all. The equitable tolling rules of this Court certainly – How about if they just waive all of that and just say, I want my money? Yeah. So, again, I think that it can't be for the reasons that the Chief Justice and Justice Breyer said, that just plaintiffs can kind of waive things around. Congress had an objective standard in mind. Is relief available under the IDA? I am so confused by your position. I'm so horribly confused. What is the purpose of all of this? Throw this case out now. Let them go back to a school they're no longer in. They're going to say to the school, give me money and what else? Justice Sotomayor, that is their position in the reply brief. That is not – you told me to look at the text of the complaint. None of that appears in the complaint. None of that, they're going to a different school, won't come back. If anything, the complaint says the reverse. They want a declaratory judgment that the school erred. The only way they can invoke that is by saying that this is a situation that is bound to recur. The purpose – why are we standing here? What are we worried about? The school already admitted that. They let her bring the dog back in. She just said, I don't – I don't feel welcome here, and left. So they already got the relief they wanted. They got an admission by the school that she was entitled to bring the dog there. So they've already said that. Notably, Petitioners never make that argument, and it's certainly not in the complaint. And the reason for that, what is in the complaint, is that they felt that the dog wouldn't be able to be welcomed back.  And I understand that there's awkwardness here, but that's an awkwardness of the statute Congress laid out. Breyer. It's not necessarily awkward. You forget the words before filing the complaint. Damages are something you get when somebody didn't give you something, but go back in time before they make that decision. At that point, what you want is the dog, not the money. Now, if that's the truth, you have to go to the board. Once the board makes clear they won't give you the dog, at that time you're free to sue. You've met any exhaustion requirement, because it's futile. They've made clear they won't. And this suit has been brought after that was done. So I don't see how this suit is going to ever get back for exhaustion, because the school has made clear they won't. So say exhaustion replies to future suits before anything happens, but not after the board makes clear exhaustion replies, but the futility exception also applies. Am I right? Justice Breyer, we agree with the futility exception. On the facts of this case, as the Sixth Circuit found, it's not available. And the reason for that, the reason for that is that we have they haven't gone through the independent due process hearing. You can't just say, oh, I met with some administrators and they didn't like the dog. You've got to go through the complicated process that IDA says. It's a time-sensitive one. It's only 105 days start to finish. But you've got to go through the whole thing. They walked out on the process before it was over. Roberts, 105 days is a big part of a school year. Correct. I mean, so I think saying all they have to do is, you know, go through a 105-day process is not particularly responsive. We don't mean to minimize that, Your Honor. The statute says, you know, short timelines. But again, we're only talking about money damages, so this isn't about injunction or the type of school year that all they're seeking is money. And so the 105 days doesn't deal with that problem of the school year. Thank you, counsel. Mr. Bagenstos, four minutes. Thank you, Mr. Chief Justice. So let's first be clear about what the statute says, right? The statute keys exhaustion on the relief that the plaintiff is seeking in the present participle. And what are we seeking here? I think it would help to clarify a lot of what happened in the last half of the argument to explain what we are and are not seeking. We are seeking money damages. Justice Sotomayor, you're exactly correct. We're seeking money damages for emotional distress. Our allegations are about emotional distress. They're not about out-of-pocket costs or anything compensable under the IDEA. We are not seeking any of the types of relief that defendants say are available under the IDEA. We are not seeking reimbursement of educational expenses. We are not seeking compensatory education or counseling. We're not seeking to change an IEP, whether through declaratory judgment or otherwise, because there's no IEP between the defendants and my client at this point. We do not have standing to assert prospective relief or to seek prospective  Sotomayor, your's is an ideal situation, conceded, for the purposes you're arguing. But how about the mixed complaints? Because that's what has been bothering my colleagues from the beginning, okay? Let's assume that you had brought this case not after you had moved her, but while she was still in the school. Right. And you didn't say, as you conceded now, that you don't want the IDEA, the fact changed. The complaint says they haven't let the service dog in, it's causing and has caused emotional distress, we want damages, it's not clear, but you do want the fact changed. What happens? Okay. And I want to answer that question. Let me just say one thing about the facts here. Of course, standing is something we would have to assert in our complaint. We would have to have asserted a desire to return. We didn't do that. Sotomayor, I just gave you a different hypothetical. Yes, I understand, and I will answer the hypothetical. And so I think the answer there is the Jones case, right? I mean, Jones does say that when you have one part of a complaint that is seeking relief that is not barred by an exhaustion requirement and another part that is barred, the thing to do is let the good part of the complaint proceed and leave the bad part of the complaint by the wayside. And I want to respond to what my opponent said about Jones and what claim means in Jones. In Jones itself, this Court cited as an example of a court applying the right approach, a case from the Seventh Circuit, Cassidy v. Indiana Department of Corrections. If you look at Cassidy, what Cassidy did was it said, well, some requests for some relief are allowed to proceed and requests for other relief by the same plaintiff are not allowed to proceed. So the right thing to do is apply the Jones partial exhaustion rule, which this Court said is the general rule in that case. If this Court concludes that our complaint might be read to embrace, notwithstanding everything we've said, might be read to embrace requests for anything that might be available in IDEA proceedings, the proper thing to do is allow the damages claim to proceed forward. Sotomayor, Does the Court have the power to stay that until the IDEA claim is exhausted? The government appeared to suggest that in their brief. So I think, you know, in some circumstances, the Court actually addressed something similar to this in the Rines case, which is cited in Jones about habeas where a total exhaustion rule applies. And even Rines said that staying is something that shouldn't be done as a matter of routine. It might be something done occasionally as a matter of discretion, but that the ordinary process should be even where total exhaustion applies to allow the plaintiffs to decide do we want to proceed with these unexhausted requests or not, which is what we would ask for. After all, in this case, a stay would be meaningless. My clients have not lived in the defendant's school district for a while. My minor child client has not gone to the defendant's school district. Sotomayor, I really – I appreciate the nature of your case. Got you. All right? But your suggestion is likely to raise a lot of hesitation in this Court among some, maybe even me. I'm getting there, Your Honor. Because if what you're saying is we're going to be on a dual track in every case, that's not going to be very attractive to the Court. May I briefly answer, Your Honor? Briefly. So our position is you're going to be on one track, which is the things that aren't barred by the exhaustion requirement proceed. Everything else goes by the wayside. That's Jones. Thank you, Your Honor. Thank you, counsel. The case is submitted.